**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HUB INTERNATIONAL MIDWEST LIMITED, | )<br>)<br>) |
| Plaintiff, | ) Civil Action No.: 22-CV-1270<br>) |
| v. | ) District Judge: Hon. Joan H. Lefkow<br>) |
| AEU BENEFITS, LLC, AEU HOLDINGS, LLC, STEPHEN SATLER, individually and as an officer and / or representative of AEU Holdings, LLC, SD TRUST ADVISORS, LLC, THOMAS STOUGHTON, individually and as an officer of SD Trust Advisors, LLC, SD Trust Advisors, LLC, and RODNEY MAYNOR, individually, | ) Magistrate Judge: Hon. Sheila M. Finnegan<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**FIRST AMENDED COMPLAINT**

Plaintiff HUB International Midwest Limited (hereinafter referred to as "HUB" or "Plaintiff"), by and through its attorneys, Goldberg Segalla LLP, for its First Amended Complaint against defendants AEU BENEFITS, LLC, AEU HOLDINGS, LLC, STEPHEN SATLER, individually and as an officer and/or representative of AEU Holdings, LLC, and AEU BENEFITS, LLC, and SD TRUST ADVISORS, LLC, THOMAS STOUGHTON, individually and as an officer of SD Trust Advisors, LLC, and RODNEY MAYNOR, individually, (hereinafter referred to as "Defendants" or, individually, "Defendant") alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over this action on the basis of diversity of citizenship under 28 U.S.C. § 1332 because (i) complete diversity of citizenship of the parties

exists, and (ii) the amount in controversy exceeds the sum or value of $75,000.00, exclusive of costs and interests.

2. At the time of filing this First Amended Complaint, Plaintiff was and is a corporation organized and existing under the laws of the State of Indiana with its principal place of business in the State of Illinois and all Defendants named in this First Amended Complaint were citizens of states other than Illinois.

3. Under 735 ILCS 5-209(a), the Court has personal jurisdiction over out-of-state Defendants.

4. Each Defendant had significant contacts with the State of Illinois from which Plaintiff's claims arise.

5. Each Defendant transacted business in Illinois and received and sent numerous communications directly to and from persons in Illinois.

6. The breaches, failures, fraud, and misrepresentations, including, but not limited to, those made on or about and/ or surrounding a March 9, 2017 Meeting between the Parties at HUB's Chicago, Illinois office (the "March 9, 2017 Meeting"), took place in Illinois.

7. Defendants marketed the medical benefits plan at issue in Illinois.

8. Defendants provided medical benefits to some, but not all, plan participants in Illinois.

9. Defendants paid some but not all, medical benefits claims in Illinois.

10. Each of the Defendants, by their actions in connection to both HUB and the State of Illinois, has purposely availed themselves of the laws and regulations of Illinois.

11. HUB maintains a principal place of business in Illinois, with several Illinois office locations, and as well as has employees in the State of Illinois.

12. Venue is appropriate in the Northern District of Illinois, Eastern Division, under 28 U.S.C. § 1391 (b)(2) because a substantial part of the events, acts, transactions, and occurrences giving rise to Plaintiff's claims occurred within the Northern District of Illinois, and the damages and injuries suffered by HUB have, or will occur there.

13. Plaintiff also identifies the below related action currently pending before the Court that directly relate to the claims asserted by HUB:

> *Receivership Management, Inc., et al. v. A. J. Corso & Associates, Inc.; et al.,* Case No.: 1:19-cv-01385 (the "Receivership Action").

## BACKGROUND OF THE PARTIES AND OTHER RELEVANT ENTITIES

14. Plaintiff **HUB International Midwest Limited** is a corporation organized and existing under the laws of the State of Indiana with its principal place of business in the State of Illinois, and is an insurance agency.

15. Defendant **AEU Benefits, LLC** ("AEU Benefits") is a limited liability company organized and existing under the laws of the State of Texas, formed on or about July 1, 2015, and a wholly owned subsidiary of AEU Holdings.

16. Upon information and belief, at all times relevant to this action, as plead in the on, in the Secretary of Labor Action venued in the Northern District of Illinois, Eastern Division, entitled *Walsh v. AEU Benefits, LLC and AEU Holdings, LLC, et al.* v. *Black Wolf Consulting, Inc., et al.* v. *AEU Benefits, LLC, et al.,* Case No.: 1:17-cv-07931-JFK-BWJ ("DOL Action") (a copy of the Second Amended Complaint in the DOL action is attached hereto and made a part hereto as **Exhibit A**), Defendant AEU Benefits exercised discretionary authority and discretionary responsibility in the management or disposition of the assets, and the administration of, underwriting for, and payment of claims of an employee medical benefits plan referred to by some as the "AEU Plan" and/or those allegedly covered by the AEU Plan, including but not limited to,

3

those of employers ("Employer Groups") who, along with their employees paid premium equivalents to and enrolled in, and/or were led to believe by Rodney Maynor and/or others associated and/or affiliated with Rodney Maynor, that they had so enrolled in an employer medical benefits plan known, among other things, alternately as "The Black Wolf Plan," "VEBA Trust," and "Cigna VEBA Trust" through Rodney Maynor, which others may have referred to as the "AEU Plan." A copy of the Second Amended Complaint in the DOL Action is attached hereto and made a part hereto as **Exhibit A**.

17. Defendant **AEU Holdings, LLC** ("AEU Holdings") is a limited liability company organized and existing under the laws of the State of Delaware, formed on or about December 12, 2014.

18. Upon information and belief, at all times relevant to this action, as plead in the DOL Action, Defendant AEU Holdings exercised discretionary authority and discretionary responsibility in the management or disposition of the assets, and the administration of, underwriting for, and payment of claims of an employee medical benefits plan referred to by some as the "AEU Plan" and/or those allegedly covered by the AEU Plan, including but not limited to, those of employers ("Employer Groups") who, along with their employees, paid premium equivalents to and enrolled in, and/or were led to believe by Rodney Maynor and/or others associated and/or affiliated with Rodney Maynor that they had so enrolled in an employer medical benefits plan known, among other things, alternately as "The Black Wolf Plan," "VEBA Trust," and "Cigna VEBA Trust" through Rodney Maynor, which others may have referred to as the "AEU Plan."

19. Defendant **Stephen Satler** is an individual who resides in New Jersey.

4

20. Upon information and belief, at all times relevant to this action, as plead in the DOL Action, Stephen Satler was the Chief Executive Officer and 21.62% owner of AEU Holdings, President of AEU Benefits, and on its Board of Managers.

21. Upon information and belief, at all times relevant to this action, as plead in the DOL Action, Defendant Stephen Satler exercised discretionary authority and discretionary responsibility in the management or disposition of the assets, and the administration of, underwriting for, and payment of claims of an employee medical benefits plan referred to by some as the "AEU Plan" and/ or those allegedly covered by the AEU Plan, including but not limited to, those of employers ("Employer Groups") who, along with their employees, paid premium equivalents to and enrolled in, and/or were led to believe by Rodney Maynor and/or others associated and/or affiliated with Rodney Maynor**,** that they had so enrolled in an employer medical benefits plan known, among other things, alternately as "The Black Wolf Plan," "VEBA Trust," and "Cigna VEBA Trust" through **Rodney Maynor**, which others may have referred to as the "AEU Plan."

22. Upon information and belief, at all times relevant to this action, as plead in the DOL Action, the names AEU Benefits and AEU Holdings are used interchangeably on various AEU Plan documents, with the shortened form "AEU" also being used frequently in documents and by the Defendants, themselves.

23. As it is difficult to decipher to which entity "AEU" refers, the term "AEU Defendants" is used in this First Amended Complaint to refer to AEU Benefits, AEU Holdings, and officer Stephen Satler, both individually and as officer and/or representative of AEU Benefits, AEU Holdings, collectively.

24. Upon information and belief, at all times relevant to this action, and as plead in the DOL Action, Defendant **SD Trust Advisors, LLC** ("SD Trust") is a limited liability company organized and existing under the laws of the District of Columbia, formed on or about December 12, 2016.

25. From approximately December 12, 2016 to November 3, 2017, SD Trust's sole client was the AEU Plan.

26. During this relevant time, SD Trust provided services to the Employer Groups covered by the AEU Plan, and to the AEU Plan, itself, by holding the assets of the Employer Groups in SD Trust's name at Iberia Bank, and paying money out of these accounts to other service providers at the AEU Defendants' direction.

27. Defendant **Thomas Stoughton**, individually and in representative capacity for SD Trust, is an individual who resides in Georgia.

28. Upon information and belief, at all times relevant to this action, and as plead in the DOL Action, Thomas Stoughton, in part owned and operated Defendant SD Trust Advisors.

29. Defendant **Rodney Maynor** is an individual who resides in Florida. Rodney Maynor is the sole owner, President, and Chief Executive Officer of Black Wolf Consulting, Inc. and R. Maynor & Associates, Inc.

30. Upon information and belief, at all times relevant to this action, and as plead in the DOL Action, Defendant Rodney Maynor exercised discretionary authority and discretionary responsibility in the management or disposition of the assets, and the administration of, underwriting for, and payment of claims of an employee medical benefits plan referred to by some as the "AEU Plan" and/or those allegedly covered by the AEU Plan, including but not limited to, those of employers ("Employer Groups") who, along with their employees, paid premium

6

equivalents to and enrolled in, and/or were led to believe by Rodney Maynor and/or others associated and/or affiliated with Rodney Maynor, that they had so enrolled in an employer medical benefits plan known, among other things, alternately as "The Black Wolf Plan," "VEBA Trust," and "Cigna VEBA Trust" through Rodney Maynor, which others may have referred to as the "AEU Plan."

## FACTS

31. On or about March 9, 2017, representatives of HUB, including but not limited to, Jeff Faber, Michelle Carlson, and Clint Anderson, met at HUB offices in Chicago, Illinois, regarding the status of the numerous unpaid medical benefits claims under the employee medical benefits plan that at was referred to, at times, as the AEU Plan, The VEBA Trust, the Cigna VEBA Trust and/or Black Wolf Plan (the "medical benefits plan").

32. The March 9, 2017 Meeting was called for by HUB to understand the servicing issues brought to HUB's attention regarding the medical benefits plan, including unpaid medical claims.

33. According to the March 9, 2017 Meeting evite, in addition to a discussion regarding "unpaid claims", the subject of the meeting was also "…future with AEU Holdings, etc.".

34. The March 9, 2017 Meeting was also attended in person, by Stephen Satler, individually and on behalf of the AEU Defendants, and Thomas Stoughton, individually and on behalf of SD Trust.

35. At the request of Rodney Maynor, HUB was providing certain limited customer service bridge type services to employers of the employees, including, but not limited to, those employees whose unpaid medical claims were under discussion at the March 9, 2017 Meeting and, therefore, HUB had a legitimate interest in being correctly informed concerning serving issues and

7

whether and when unpaid medical benefits claims would be paid, and whether and when future medical benefits claims would be paid for these employees.

36. During all times relevant to this action, the Defendants were well aware that HUB, was providing certain limited customer service bridge type services to employers of the employees whose unpaid medical claims were under discussion at the March 9, 2017 Meeting.

37. Based on these facts, HUB had a legitimate interest in being correctly informed as to servicing issues and whether and when unpaid medical claims would be paid, and whether and when future medical benefits claims would be paid for employees enrolled in the medical benefits plan, and that HUB would reasonably rely upon the information conveyed and representations made by the aforementioned Defendants at the March 9, 2017 Meeting regarding the medical benefits plan.

38. At the March 9, 2017 Meeting, representations were made to the HUB representatives by Stephen Satler, individually and on behalf of the AEU Defendants, and Thomas Stoughton, individually and on behalf of SD Trust, that such medical benefits plan was on track to and would, in fact, fund, process, and pay all of the outstanding unpaid medical benefits claims, as well as future claims, concerning plan participants and their beneficiaries in connection with employer groups associated with HUB. During the March 9, 2017 meeting, the Defendants made specific representation to the HUB representatives as to Defendants' near term timetable for promptly funding and paying all outstanding unpaid medical benefits claims.

39. At the March 9, 2017 Meeting, representations were made to the HUB representatives by Stephen Satler, individually and on behalf of the AEU Defendants, and by Thomas Stoughton, individually and on behalf of SD Trust, informing HUB that such medical

8

benefits plan was and would remain financially sound and would timely pay medical benefits claims.

40. At the March 9, 2017 Meeting, representations were made to the HUB representatives by Stephen Satler, individually and on behalf of the AEU Defendants, and Thomas Stoughton, individually and on behalf of SD Trust, that the medical benefits plan would operate appropriately in that it would timely fund and pay medical benefits claims, and the aforementioned Defendants explicitly encouraged and requested HUB to keep employer groups and their associated employees/plan participants and their beneficiaries enrolled in such medical benefits plan.

41. During the March 9, 2017 Meeting, the aforementioned Defendants both impliedly and explicitly encouraged and requested HUB representatives in attendance at the meeting to also refer additional employer groups to the medical benefits plan based upon the represented financial strength and soundness of the medical benefits plan as represented to HUB by the aforementioned Defendants, and its represented ability to timely fund and pay benefits claims then, and into the future.

42. Further representations were made to HUB representatives at the March 9, 2017 Meeting by Stephen Satler, the AEU Defendants, and Thomas Stoughton, of SD Trust, that unpaid claims would be funded based on a schedule with the $140,000 in smaller claims funded "now" and $171,000 funded by March 17, 2017 with the remainder of the unpaid claims to be paid by such medical benefits plan shortly thereafter.

43. The aforementioned defendants also represented to HUB at the March 9, 2017 Meeting that there was in place an excess policy at an attachment point of $125,000 through Lloyd's of London that would cover claims exposures.

9

44. After the March 9, 2017 Meeting, the aforementioned defendants and or their agents, including but not limited to non-party Steven Golin, made similar representations at various times to HUB representatives regarding the funding and the payment of unpaid claims for the medical benefits plan.

45. During 2017, including before and after the March 9, 2017 Meeting, Defendant Rodney Mayor and/or those acting on his behalf and at his direction, including but not limited to non-party Steven Golin, made similar misrepresentations at various times to HUB representatives regarding the funding and the payment of unpaid claims for the medical benefits plan.

46. Upon information and belief, and as alleged in the DOL Action, and unbeknownst to HUB at "[i]n March 2017, in a memorandum from Stephen Satler and other AEU officers, the AEU Defendants acknowledged that the AEU Plan is materially underfunded with approximately 21,000 unpaid claims. The AEU Defendants sent a similar memorandum to Rodney Maynor in March 2017, noting unpaid claims from 2016 to date." **Exhibit A** at ¶ 193.

47. Upon information and belief, and as alleged in the DOL Action, and unbeknownst to HUB "[i]n April 2017, Maynor communicated in writing with Stoughton regarding unpaid claims and complaints from participants." **Exhibit A** at ¶ 194.

48. Upon information and belief, as alleged in the DOL Action and unbeknownst to HUB "…the AEU Defendants [did not] disclose[d] the fact that the AEU Plan was unable to pay claims to either the current or newly enrolled [medical benefits plan participants], while unwitting participants and beneficiaries continued to incur claims for medical services and face collections notices and possible litigation for existing unpaid medical claims." **Exhibit A** at ¶ 196.

49. Upon information and belief, neither prior to nor after the March 9, 2017 Meeting did Rodney Maynor, nor Stephen Satler, individually, nor on behalf of the AEU Defendants, nor

10

Thomas Stoughton, individually, nor on behalf of SD Trust, disclose to HUB that the medical benefits plan was unable to pay claims, while unbeknownst to HUB, unwitting participants and their beneficiaries continued to incur claims for medical services and face collections notices and possible litigation for existing unpaid medical claims.

50. Upon information and belief, neither prior to nor after the March 9, 2017 Meeting did Rodney Maynor, nor Stephen Satler, individually, nor on behalf of the AEU Defendants, nor Thomas Stoughton, individually, nor on behalf of SD Trust, disclose to employer groups nor their employees for which HUB was providing certain customer service bridge services, that the medical benefits plan was unable to pay claims to either the current or newly enrolled participants, while unwitting participants and their beneficiaries continued to incur claims for medical services and face collections notices and possible litigation for existing unpaid medical claims.

51. Contrary to the representations made by Stephen Satler, individually and on behalf of the AEU Defendants, and Thomas Stoughton, individually and on behalf of SD Trust, and those representations made by and on behalf of Rodney Maynor, the medical benefits plan did not timely fund and pay all of the unpaid medical benefits claims.

52. Stephen Satler, individually and on behalf of the AEU Defendants, and Thomas Stoughton, individually and on behalf of SD Trust, and Rodney Maynor, knew or should have known that the various aforementioned representations were false both at and around the time when they were made to various HUB representatives.

53. According to the allegations of the DOL Action and the Receivership Action, there are millions of dollars of unpaid medical claims.

54. In addition to the aforementioned misrepresentations, Defendant Rodney Maynor, at various times from 2015-2017, made numerous other material representations which,

11

unbeknownst to HUB, upon information and belief were false, in whole or in part, including the following:

    a. the number of plan participants and/or employer groups;

    b. that the entire captive (all of the cells) represented nearly 60,000 members, of which 14,000 members were under the Black Wolf cell;

    c. the structure of the Black Wolf Plan as a VEBA Trust;

    d. the actuary as Milliman, Inc.;

    e. that the Black Wolf Plan was reviewed for compliance by one or more ERISA attorneys;

    f. that the auditor of the captive was Arthur Morris Bermuda and audits were done monthly;

    g. that monthly premium contributions were the only amounts at risk for the employer groups, and they would have no liability for any claims costs;

        i. for example, if a group has an employee with a $1,000,000 claim the only risk is the monthly premium;

    h. that the plan acted similar to a fully insured plan with respect to claims payment;

    i. that the plan was set that each group paid that maximum premiums each month and could leave the plan at any time with no run out claims exposure;

    j. that Rodney Maynor would not release the plan financials but verbally stated the program was funded to 130% to 140% of expected claims;

    k. that Rodney Maynor and/or his companies would attend to the VEBA trust agreements and assisting the employer groups in setting up the VEBA trusts, and additionally, that Wilson Benefits as the Plan Administrator would create

        the employer groups' VEBA Trusts and take care of the "VEBA Trust Paperwork" with the employer group;

l. that Rodney Maynor and/or his companies would provide the Summary Plan Descriptions ("SPD's") for the employer groups;

m. that Rodney Maynor and/or his companies would deal directly with the TPA's, would submit funding to the VEBA to pay claims;

n. that billing and enrollment issues had to be resolved at Black Wolf;

o. that Rodney Maynor and/or his companies would appropriately handle the service issues, claim issues and other plan questions of employer groups, which HUB should simply direct to Black Wolf's attention for handling; and

p. other such misrepresentations concerning the Defendants' duties, responsibilities, obligations that will be more fully identified through discovery.

55. As a result of the aforementioned misrepresentations of Stephen Satler, individually and on behalf of the AEU Defendants, and Thomas Stoughton, individually and on behalf of SD Trust, and those made by and on behalf of Rodney Maynor, HUB has suffered monetary damages, including but not limited to, loss of business, reputational harm, costs and attorney's fees in the Receivership Action.

56. HUB denies any liability or responsibility whatsoever for alleged damages in the Receivership Action, but faces potential exposure in the Receivership Action, and must defend itself as to such alleged claims and alleged damages asserted therein, and expend significant and continuing costs and attorneys' fees in so doing.

57. Upon information and belief, the alleged damages asserted against HUB in the Receivership Action are alleged to be approximately $4 Million dollars or more, with respect to

alleged unpaid medical benefits claims as well as a return of HUB's "commissions" which such alleged damages, if liability and damages are found, are directly attributable, caused and/or contributed to, and proximately caused, in whole and in part, by the various aforementioned misrepresentations of Stephen Satler, individually and on behalf of the AEU Defendants, and Thomas Stoughton, individually and on behalf of SD Trust, and by and on behalf of Rodney Maynor, upon which HUB had a reasonable right to rely, and did rely, in whole and in part.

58. Had Stephen Satler, individually and on behalf of the AEU Defendants, and Thomas Stoughton, individually and on behalf of SD Trust, and Rodney Maynor, provided HUB with true and accurate information as to the inability of the medical benefits plan to timely fund and pay claims, and not fraudulently concealed such true and accurate information from HUB, HUB would have transmitted that information to the employers whose employees and their beneficiaries were enrolled in the medical benefit plan, and/or HUB could have taken other action to avert the damages set forth herein.

59. A copy of Plaintiff's Third Amended Complaint in the Receivership Action is attached hereto and incorporated herein as **Exhibit B**.

60. A copy of HUB's Answer to Plaintiff's Third Amended Complaint in the Receivership Action is attached hereto and incorporated herein as **Exhibit C**.

61. A Default Judgment in the amount of $55,032,379 described as the "unpaid claim amount" in the Default Judgment was taken against Rodney Maynor in the DOL Action, pursuant to which Rodney Maynor is deemed to admit the factual allegations against him in the DOL Action. A copy of such default judgment is attached hereto and incorporated herein as **Exhibit D**.

**AS AND FOR A FIRST CAUSE OF ACTION AS TO THE AEU DEFENDANTS, STEPHEN SATLER, INDIVIDUALLY, THOMAS STOUGHTON, INDIVIDUALLY, AND SD TRUST, and RODNEY MAYNOR**

## NEGLIGENT MISREPRESENTATION

62. HUB repeats, reiterates, and realleges paragraphs 1 through 61 with the same force and effect as if fully set forth herein.

63. Defendants, explicitly or implicitly, directly or indirectly, made certain representations to representatives of HUB.

64. Defendants' representations to HUB included, but were not limited to, the financial soundness of the medical benefits plan, its ability to fund and pay claims now and into the future, that unpaid claims and future claims would be timely funded and paid, that there was in place an excess policy at an attachment point of $125,000 through Lloyd's of London that would cover claims exposures, and the administration, operating structure, and legal structure of the medical benefits plan.

65. The various aforementioned representations made by the Defendants to HUB were false.

66. Defendants had respective pecuniary interests in making these false representations, including but not limited to, in order to misdirect and mislead HUB to not alert others such as employers and, in turn, their employees and beneficiaries enrolled in the medical benefits plan, to leave the medical benefits plan.

67. Defendants owed fiduciary duties under ERISA to the plan participants and their beneficiaries in the medical benefits plan.

68. Defendants made the various misrepresentations to HUB in order to influence the decisions of plan participants, to whom it owed fiduciary duties to under ERISA, to stay in the medical benefits plan, and to not leave the medical benefits plan.

69. As such, and separate and apart from the fiduciary duties that Defendants owed to the plan participants and their beneficiaries under ERISA, Defendants had a HUB duty of care to provide and communicate truthful information regarding the medical benefits plan to HUB.

70. In making aforementioned false representations, Defendants breached their duty to HUB by failing to exercise due care.

71. HUB justifiably relied to its detriment on Defendants' representations, and had HUB been provided with true and accurate information regarding the poor financial condition of the medical benefits plan and its inability to fund and pay medical benefits claims, and/or accurate and true information with respect to the administration, operating structure and legal structure of the medical benefits plan, HUB would have been in a position to timely alert employer groups, and in turn, their enrolled employees and their beneficiaries to this information, and would have been in a position to urge them to promptly leave the medical befit plan, and/or HUB could have taken other action to avert the damages set forth herein.

72. As a direct and proximate result of HUB reasonably relying on Defendants' misrepresentations, HUB has suffered pecuniary loss and actual damages.

73. Because Defendants made negligent misrepresentations and breached their duty to exercise due care, HUB was damaged as a result and submits that Defendants are liable for such damages.

**AS AND FOR A SECOND CAUSE OF ACTION AS TO AEU DEFENDANTS, STEPHEN SATLER, INDIVIDUALLY, THOMAS STOUGHTON, INDIVIDUALLY, AND SD TRUST, AND RODNEY MAYNOR**

**FRAUDULENT MISREPRESENTATION**

74. HUB repeats, reiterates, and realleges paragraphs 1 through 73 with the same force and effect as if fully set forth herein.

75. The AEU Defendants, Stephen Satler, individually and on behalf of the AEU Defendants, and Thomas Stoughton, individually on behalf of SD Trust, explicitly or implicitly, directly or indirectly, made certain representations to HUB about the medical benefits plan at the meeting at HUB's Chicago, Illinois offices occurring on or about March 9, 2017.

76. The AEU Defendants, Stephen Satler, individually and on behalf of the AEU Defendants, and Thomas Stoughton, individually on behalf of SD Trust, explicitly or implicitly, directly or indirectly, made certain representations of material fact to and fraudulently concealed material facts from, representatives of HUB with respect to the financial soundness of the medical benefits plan, and its ability to fund and pay claims now and into the future, and that unpaid claims and future would be timely funded and paid, there was in place an excess policy at an attachment point of $125,000 through Lloyd's of London that would cover claims exposures.

77. The various aforementioned representations made by the Defendants to HUB were false.

78. Defendants had respective pecuniary interests in making these false representations in order to convince HUB not to alert employers and in turn, their employees and beneficiaries enrolled in the medical benefits plan, to leave the medial benefits.

79. During the year 2017, AEU Defendants, Stephen Satler, individually and on behalf of the AEU Defendants, and Thomas Stoughton, individually on behalf of SD Trust, and during the years 2015-2017, Defendant Rodney Maynor, all made, and continued to make, false representations of material fact and fraudulently concealed material facts to representatives of HUB concerning the viability of the medical benefit plan as more fully set for the above.

80. Defendants either knew of the falsity of these representations, or had a reckless disregard for the truth or falsity of the representations concerning the viability of the medical

17

benefits plan, the financial soundness of the medical benefits plan, and its ability to fund and pay claims now and into the future, and that unpaid claims and future would be timely funded and paid, there was in place an excess policy at an as to as more fully set forth above, and further with respect to Rodney Maynor with respect to with respect to the falsity of his representations regarding the administration, structure and legal structure of the medical benefits plan, as more fully set forth above.

81. Defendants made these fraudulent misrepresentations, and fraudulently concealed material facts to representatives of HUB with the intent that HUB would rely on them and in order to convince HUB not to alert others, including but not limited to employers and in turn, their employees and beneficiaries enrolled in the medical benefits plan, to leave the medial benefits.

82. HUB had a right to rely on these representations and did in fact rely on these representations

83. HUB was unaware that these representations were false.

84. HUB justifiably relied on Defendants' representations, and had HUB been provided with true and accurate information regarding the poor financial condition of the medical benefits plan and its inability to fund and pay medical benefits claims, HUB would have been in a position to timely alert employer groups, and in turn, their enrolled employees and their beneficiaries to this information, and would have been in a position to urge them to promptly leave the medical befit plan, and/or HUB could have taken other action to avert the alleged damages set forth herein.

85. As a direct and proximate result of HUB reasonably relying on Defendants' fraudulent misrepresentations of material facts and fraudulent concealment of material facts, HUB has suffered pecuniary loss and actual damages, and may suffer further pecuniary loss and actual damages.

86. HUB submits that Defendants are liable to HUB for the damages proximately caused by Defendants' fraud and misrepresentations.

**WHEREFORE**, Plaintiff HUB, through counsel, respectfully requests this Court enter judgment against Defendants jointly and severally herein on each of the causes of action in Plaintiff HUB's favor and against Defendants, awarding Plaintiff its actual damages, compensatory damages, treble damages, punitive damages and any other amount to be determined at trial by law, reasonable attorneys' fees, and court costs in the Receivership Action, and reasonable attorneys' fees, and court costs in this action, and such further relief as the Court deems just, equitable and proper.

Dated: Chicago, Illinois
March 29, 2022

GOLDBERG SEGALLA LLP

By: */s/ Larry D. Mason*

Larry D. Mason

*Larry D. Mason Physical Address:*
GOLDBERG SEGALLA LLP
222 West Adams Street, Suite 2250
Chicago IL 60606
Tel: (312) 572-8444
lmason@goldbergsegalla.com

**Mailing Address:**
P.O. Box 957
Buffalo, NY 14201

*Attorneys for Plaintiff*

32819650.v1

19